IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| RAYMOND A. YANCEY, | ) | |
| | ) | |
| as Receiver, | ) | |
| | ) | |
| v. | ) | Case No. 1:16-cv-0057 |
| | ) | |
| INTERNATIONAL FIDELITY | ) | |
| INSURANCE CO., ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

### M E M O R A N D U M   O P I N I O N

This matter is before the Court on Defendants International Fidelity Insurance Company, Nationwide Electrical Services, Inc., and John P. Young's motion to dismiss the complaint for lack of venue or, alternatively, to transfer to the United States District Court for the District of Maryland. [Dkt. 17.] Also before the Court is Defendant R. Vaughn Herbert's motion to dismiss for lack of personal jurisdiction. [Dkt. 11.] For the following reasons, the Court will deny the motions to dismiss and will grant the motion to transfer.

### I.   Background

On September 9, 2014, this Court granted a consent motion to appoint Raymond A. Yancey ("Yancey" or "Receiver") as

Receiver for various Truland[1] businesses that had filed for Chapter 7 bankruptcy. (*See* Receiver Order [Dkt. 1-2].) This Court's Receiver Order tracked the language of a Bankruptcy Court[2] order lifting the bankruptcy stay to permit BMO Harris Bank to enforce its lien on certain Truland property. (*See* Stay Lift Order [Dkt. 1-1].) The Stay Lift Order applied broadly to Truland's accounts, chattel paper, instruments, documents, general intangibles, inventory, equipment, fixtures, and proceeds of the foregoing, among other categories of Truland property. (Stay Lift Order at 3-4.) This Court appointed Yancey as Receiver "to take change of all the property of Truland described in the Stay Lift Order." (Receiver Order ¶ 1.) Acting in that role, Yancey filed this lawsuit against four Defendants who allegedly possess Truland property defined in the Stay Lift and Receiver Orders.

Yancey alleges that Defendants owe payments to Truland for subcontractor work Truland performed in Maryland. Specifically, one Truland entity supplied labor and materials as

---

[1]    For purposes of this memorandum opinion, "Truland" includes the Truland Group Inc.; Truland Systems Corp.; Pel-Bern Electric Corp.; Blumenthal Kahn Truland Electric, LLC; Tech Inc.; The Truland Group of Companies, Corp.; Snowden River Corp.; Truland Service Corp.; Truland Walker Seal Transportation, Inc.; and Northside Electric, LLC.
[2]    Truland's bankruptcy is proceeding in the United States Bankruptcy Court for the Eastern District of Virginia, Alexandria Division.

2

an electrical subcontractor on a project at the University of Maryland in College Park.  (Compl. ¶ 2.)  Another Truland entity supplied labor and materials as an electrical subcontractor on two highway travel-plaza projects in Aberdeen, Maryland. (Compl. ¶¶ 3-4.)  Truland is allegedly owed over $10 million for this work, approximately $8 million of which remains unpaid. (Compl. ¶¶ 118, 127.)

The state of Maryland owns the projects[3] and hired a general contractor to oversee the construction.  (Compl. ¶¶ 20, 51.)  The general contractor hired a Maryland company named Nationwide Electrical Services, Inc. ("Nationwide") to perform electrical subcontractor work.  (Compl. ¶¶ 22-23, 52-53.) Defendant John P. Young is the President and CEO of Nationwide, and Defendant R. Vaughn Herbert is a Vice President.  (Compl. ¶¶ 17-18.)  Defendant International Fidelity Insurance Company ("Fidelity") issued surety bonds for these subcontracts naming Nationwide as the principal and the general contractor as the obligee.  (Compl. ¶¶ 15, 39-41, 77-79.)

Nationwide subcontracted some of its obligations on the projects to Truland entities through a tiered subcontract.

---

[3]     The travel-plaza projects are owned by the State of Maryland, Maryland Transportation Authority pursuant to a public-private partnership with Areas USA, MDTP, LLC.  (Compl. ¶ 51.)

(Compl. ¶¶ 23, 53.)  Yancey alleges that Truland performed its contractual obligations in a timely, workmanlike, and acceptable manner, and that Nationwide received payments from the general contractor for Truland's work.  (Compl. ¶¶ 25-29, 36, 55-61.) Truland and Yancey made repeated demands to Nationwide and Fidelity for payment, but approximately $8 million remains unpaid on Truland's subcontracts.  (Compl. ¶¶ 49, 83, 127.)

Yancey filed a five-count Complaint in this Court to recover the amounts owed to Truland.  Counts I and II allege that Fidelity breached its bond obligations by not paying Truland for labor, materials, and services furnished.  (*See* Compl. ¶¶ 84-101.)  Counts III and IV allege that Nationwide breached its subcontracts with Truland by failing and refusing to pay Truland the outstanding balance for work performed.  (*See* Compl. ¶¶ 102-113.)  Count V alleges that Herbert and Young retained payments intended for Truland in trust and are personally liable for those payments pursuant to the Maryland Construction Trust Fund Statute, Md. Code Ann., Real Prop. § 9-201.  (*See* Compl. ¶¶ 114-127.)

On February 25, 2016, Defendant Herbert moved to dismiss for lack of personal jurisdiction.  (Herbert's Mem. in Supp. Dismiss [Dkt. 11-1].)  The next day, Defendants Fidelity, Nationwide, and Young moved to dismiss for improper venue or to

4

transfer venue to the U.S. District Court for the District of
Maryland.  (Mem. in Supp. Transfer [Dkt. 17-1].)  Those motions
have been fully briefed and argued at an oral hearing.  They are
now ripe for disposition.

## II.   Standard of Review

Federal Rule of Civil Procedure 12(b)(2) permits
dismissal of an action when the court lacks personal
jurisdiction over the parties.  The plaintiff bears the burden
of demonstrating personal jurisdiction by a preponderance of the
evidence once its existence is questioned.  *Combs v. Bakker*, 886
F.2d 673, 676 (4th Cir. 1989).  When a district court resolves a
12(b)(2) motion without an evidentiary hearing, however, the
plaintiff need prove only a prima facie case of personal
jurisdiction.  *Mylan Labs, Inc. v. Akzo, N.V.*, 2 F.3d 56, 60
(4th Cir. 1993); *Combs*, 886 F.2d at 676.  In deciding whether
the plaintiff has proved the prima facie case, the district
court must draw all reasonable inferences arising from the
proof, and resolve all factual disputes, in the plaintiff's
favor.  *Combs*, 886 F.2d at 676; *Wolf v. Richmond Cty. Hosp.
Auth.*, 745 F.2d 904, 908 (4th Cir. 1984).  If personal
jurisdiction is lacking, the court may dismiss or transfer the
case pursuant to 28 U.S.C. § 1406(a).  *See Saudi v. Northrop*

5

*Grumman Corp.*, 427 F.3d 271, 277 (4th Cir. 2005); *In re Carefirst of Md., Inc.*, 305 F.3d 253, 256 (4th Cir. 2002).

Federal Rule of Civil Procedure 12(b)(3) permits a defendant to challenge the plaintiff's choice of venue.  The plaintiff bears the burden of establishing that venue is proper. *T. & B. Equip. Co. v. RI, Inc.*, No. 3:15-cv-337, 2015 WL 5013875, at *2 (E.D. Va. Aug. 24, 2015).  "But if no evidentiary hearing is held, 'the plaintiff need only make a prima facie showing of venue.'"  *Id.* (quoting *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004)).  "The court need not accept the pleadings as true, but instead may consider outside evidence. However, the Court must still draw all inferences in favor of the plaintiff."  *Id.* (citations omitted).  If venue is improper, the court may dismiss the case or exercise its discretion to transfer pursuant to 28 U.S.C. § 1406(a).  *See Quinn v. Watson*, 145 F. App'x 799, 800 (4th Cir. 2005).

Even if personal jurisdiction and venue are proper, the court may transfer pursuant to 28 U.S.C. § 1404(a).  *Brock v. Entre Computer Ctrs., Inc.*, 933 F.2d 1253, 1257 (4th Cir. 1991).  Section 1404(a) permits a district court to transfer a civil action "[f]or the convenience of parties and witnesses, in the interest of justice."  28 U.S.C. § 1404(a).  The moving party bears the burden of demonstrating that transfer is proper.

*Intranexus, Inc. v. Siemens Med. Solutions Health Servs. Corp.*, 227 F. Supp. 2d 581, 583 (E.D. Va. 2002).  But when a valid forum-selection clause applies, "the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted."  *Atl. Marine Const. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 134 S. Ct. 568, 577 (2013).

### III.  Analysis

The Court will apply the above principles to Defendants' motions in the following order: (1) motion to dismiss for lack of personal jurisdiction; (2) motion to dismiss for improper venue; (3) motion to transfer for convenience and in the interest of justice.  As described below, the Court concludes that personal jurisdiction and venue are proper.  None-the-less, the Court will transfer this case to the U.S. District Court for the District of Maryland pursuant to 28 U.S.C. § 1404(a).

A.      Personal Jurisdiction

This proceeding is ancillary to the Court's order appointing Yancey as a receiver.  *Cf. Evans & Assocs., LLC v. Holibaugh*, 609 F.3d 359, 362-63 (4th Cir. 2010) (discussing ancillary proceedings in receivership context generally).  Accordingly, the Court's personal jurisdiction analysis turns on an application of 28 U.S.C. §§ 754, 1692, and Federal Rule of

Civil Procedure 4(k)(1)(C).[4]  It is well recognized that these
statutes, working together, allow a court to exercise personal
jurisdiction over a defendant without considering the
defendants' minimum contacts with the forum, when doing so
complies with due process.  *See SEC v. Bilzerian*, 378 F.3d 1100
(D.C. Cir. 2004); *Am. Freedom Train Found. v. Spurney*, 747 F.2d
1069 (1st Cir. 1984); *Haile v. Henderson Nat'l Bank*, 657 F.2d
816 (6th Cir. 1981); *Carney v. Lopez*, 933 F. Supp. 2d. 365, 375
(D. Conn. 2013); *Hodgson v. Gilmartin*, No. 06-1944, 2006 WL
2707397, at *7 (E.D. Pa. Sept. 18, 2006); *Terry v. Modern Inv.
Co.*, No. 3-04cv00085, 2005 WL 1154274, at *1 (W.D. Va. May 11,
2005).  Establishing personal jurisdiction under these statutes
is a multi-step process.  First, a "receiver appointed in any
civil action or proceeding involving property, real, personal or
mixed, situated in different districts shall . . . be vested
with complete jurisdiction and control of all such property with
the right to take possession thereof" if the receiver files
copies of the complaint and order of appointment in the district
where the property is located within ten days of his
appointment.  28 U.S.C. § 754.  By making those timely filings,

---

[4]     The Receiver Order noted that Yancey's receivership
"is subject to, and shall be administered according to Federal
Rule of Civil Procedure 66, 28 U.S.C. §§ 754, 959, and 1692."
(Receiver Order at 4.)

the receiver acquires *in rem* jurisdiction over the receivership property.  The receiver may then establish personal jurisdiction over non-forum defendants in the receivership court pursuant to Rule 4(k)(1)(C) because 28 U.S.C. § 1692 authorizes nationwide service of process, provided the assertion of jurisdiction is compatible with due process under the Fifth Amendment of the United States Constitution.  *See ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 626 (4th Cir. 1997); *Terry*, 2003 WL 21738299, at *4.

Parties do not dispute that Yancey complied with the statutory requirements of sections 754 and 1692.  The Court appointed Yancey as receiver on September 9, 2014, and Yancey filed copies of the complaint and appointment order in the District of Maryland within ten days, as required by section 754.  (*See* Mem. in Opp'n to Herbert Ex. A [Dkt. 19-1].)  Yancey then affected service of process as to all Defendants and no Defendant has argued that service was improper.  (*See* Summonses [Dkts. 4, 5, 6].)  Thus, the statutory requirements for personal jurisdiction in this Court are satisfied.

Despite the foregoing, the individual Defendants raise two challenges to personal jurisdiction that the Court must address.  First, Defendants Herbert and Young argue the claims alleged against them are commercial torts, which are not

9

Yancey's "property" within the meaning of the Stay Lift and Receiver Orders.  Thus, they contend that Yancey may not rely on the receivership statutes to assert personal jurisdiction over them.[5]  Defendants' argument is not persuasive.

The applicability of the receivership statutes turns on whether Yancey alleges that Herbert and Young possess receivership property.  *Cf. U.S. SBA v. Cottonwood Advisors, LLC*, No. 3:12-cv-1222, 2012 WL 6044843, at *3 (N.D. Tex. Dec. 4, 2012) (considering whether defendant was holding receivership property).  Yancey brought this lawsuit to collect payments that are allegedly owed to Truland for subcontractor services rendered and alleges that Herbert and Young "knowingly and/or wrongfully retained" those payments.  (Compl. ¶¶ 123, 125.) Payments for subcontract services performed fall within the Stay Lift and Receiver Order[6] definition of property as either accounts,[7] general intangibles,[8] or proceeds thereof.[9]  *Cf.*

---

[5]     The Court ordered supplemental briefing to address this issue because Defendants raised it for the first time at oral argument.  (*See* Order [Dkt. 26].)
[6]     Parties rely upon both the Illinois and Virginia versions of the Uniform Commercial Code ("UCC"), Article 9. (*See* Pl.'s Suppl. Br. [Dkt. 30] at 9 n.9; Herbert Suppl. Br. [Dkt. 29] at 6 n.2.)  For purposes of this proceeding, the two states have adopted the same UCC language.  Accordingly, the Court will refer to the UCC definitional provisions.
[7]     *See* U.C.C. § 9-102(a)(2) (defining account as "a right to payment of a monetary obligation . . . for services rendered"); *In re Straight*, 200 B.R. 923, 931 (Bankr. D. Wyo.

*Cottonwood Advisors*, 2012 WL 6044843, at *3 ("The cases uniformly hold that money owed to the entity in receivership is a receivership asset."). The nature of the property and this proceeding do not change simply because Yancey bases his claim against Herbert and Young on the Maryland Construction Trust Fund Statute. Regardless of the theory of relief, the claims seek only to recover alleged receivership property and are ancillary to Yancey's role as Receiver. (*See* Receiver Order ¶ 7 (authorizing Yancey to "institute and prosecute all such claims, actions, suits, insurance matters and the like . . . as may be necessary in his judgment for the proper protection of the Receivership Property").[10]

---

1996) (interpreting Wyoming law to conclude that subcontractor's right to monies owed for contract services falls "squarely into the definition of an account, i.e., a 'right to payment for . . . services rendered which is not evidenced by an instrument or chattel paper"); *Lions Farms, Inc. v. Caprock Indus., Inc.*, 54 B.R. 241, 244-45 (D. Kan. 1985) (same under Kansas law).

[8]     *See* U.C.C. § 9-102(a)(42) (establishing residual category for personal property that is not an account, a commercial tort claim, or other excluded category).

[9]     *See* U.C.C. § 9-102(a)(64)(defining "proceeds" to include property "arising out of collateral" or "whatever is acquired upon the . . . disposition of collateral").

[10]     Truland's Chapter 7 Trustee submitting an affidavit agreeing that Yancey "possesses and controls the exclusive right to pursue" these claims against Herbert and Young. (*See* Trustee Acknowledgment [Dkt. 30-1] at 2.) Because there is no dispute between the Trustee and the Receiver regarding the scope of the Stay Lift Order, the present case does not invoke the bankruptcy

Second, Defendant Herbert argues that exercising personal jurisdiction over him would violate his Fifth Amendment due process rights.  (Herbert Reply [Dkt. 21].)  Herbert presents this argument through the lens of a multi-factor analysis borrowed from the Court of Appeals for the Tenth Circuit.  *See Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206 (10th Cir. 2000).  Under that analysis, Herbert emphasizes that he has minimal contacts with Virginia, he was a minor actor regarding the contracts at issue, and it would be inconvenient for him to drive 72.4 miles from his home past Baltimore and Washington, D.C. to reach this courthouse.  (*See* Herbert Reply at 2-5.)  The Court finds no need to resort to Tenth Circuit law or to linger on Herbert's plainly inadequate due process arguments.

The Fourth Circuit's standard for Fifth Amendment due process analysis is controlling here.  Under that standard, extreme inconvenience or unfairness must outweigh "the congressionally articulated policy of allowing the assertion of *in personam* jurisdiction" in this forum.  *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 627 (4th Cir. 1997).  It is "only in highly unusual cases that inconvenience will rise to a level

court's "exclusive jurisdiction" to resolve such disputes.  (*See* Receiver Order ¶ 1; *see also* Stay Lift Order at 6.)

of constitutional concern." *Id.* (quoting *Republic of Panama v. BCCI Holdings*, 119 F.3d 935, 947 (11th Cir. 1997)).  Defendant bears the burden of making this formidable showing.  *See D'Addario v. Geller*, 264 F. Supp. 2d 367, 387 (E.D. Va. 2003).

Herbert has not carried his burden of proving extreme inconvenience or unfairness in this case.  The statutory authorization of nationwide service of process in receivership proceedings would be a featherweight measure indeed if it was outbalanced by the inconvenience to Herbert in this case. Simply put, requiring Herbert to travel less than eighty miles from his home to this courthouse is not constitutionally inconvenient or unreasonable, regardless of the traffic conditions.  *See, e.g.*, *ESAB*, 126 F. 3d at 627 (finding no Fifth Amendment concern in haling defendants from New Hampshire to South Carolina); *Terry*, 2003 WL 22125300, at *5 (finding no extreme hardship in subjecting Michigan defendant to personal jurisdiction in Virginia). Accordingly, the Court finds that exercising personal jurisdiction over Herbert is proper in this case.

B.        Venue is Proper in this Ancillary Proceeding

Defendants also argue that venue is improper here because Yancey cannot satisfy any of the bases for venue under 28 U.S.C. § 1391(b).  This case need not satisfy the section

13

1391(b) general venue requirements, however, because this proceeding is ancillary to the appointment of a receiver and personal jurisdiction is proper.  *See Bilzerian*, 378 F.3d at 1104 ("[T]he district court correctly concluded that, because the receiver's complaint was brought to accomplish the objectives of the Receiver Order and was thus ancillary to the court's exclusive jurisdiction over the receivership estate, venue was properly established."); *Haile*, 657 F.2d at 922 n.6 ("[W]here jurisdiction is ancillary, the post-jurisdictional consideration of venue is ancillary as well."); *Scholes v. Lehmann*, 56 F.3d 750, 753 (7th Cir. 1995) ("The laying of venue . . . is authorized by 28 U.S.C. § 754, which allows a receiver to sue in the district in which he was appointed to enforce claims anywhere in the country."); *Hodgson v. Gilmartin*, No. 06-1944, 2006 WL 2707397, at *7 (E.D. Pa. Sept. 18, 2006). Accordingly, venue is proper in this Court.

Although venue and personal jurisdiction are proper, the Court will exercise its discretion to transfer.

C.      Transfer Pursuant to 28 U.S.C. § 1404(a)

Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or

division to which all parties have consented." 28 U.S.C.
§ 1404(a). To make that determination, the Court must consider
"(1) whether the claims might have been brought in the
transferee forum; and (2) whether the interest of justice and
convenience of the parties and witnesses justify transfer to
that forum." *Nader v. McAuliffe*, 549 F. Supp. 2d. 760, 762
(E.D. Va. 2008) (quoting *JTH Tax, Inc. v. Lee*, 482 F. Supp. 2d.
731, 735 (E.D. Va. 2007)).

The first requirement is easily met in this case. "In
order to demonstrate that an action might have been brought in a
proposed transferee district, a movant must establish that both
venue and jurisdiction with respect to each defendant is proper
in the transferee district." *Koh v. Microtek Int'l, Inc.*, 250
F. Supp. 2d. 627, 630 (E.D. Va. 2003). The District of Maryland
has personal jurisdiction[11] over all Defendants and venue[12] is
proper in Maryland. Yancey does not argue otherwise.

---

[11] Herbert and Young are individuals domiciled in
Maryland. (*See* Compl. ¶¶ 17, 18.) Nationwide is a Maryland
corporation with its principal place of business in Maryland.
(*See* Compl. ¶ 16.) Thus, the Maryland court has general
personal jurisdiction over those Defendants. *See* Md. Code Ann.,
Cts. & Jud. Proc. § 6-102(a). The Maryland court has specific
jurisdiction over Fidelity because Fidelity contracted to act as
surety for a contract to be performed in Maryland. *See id.* § 6-
102(b)(6).
[12] Venue is proper in Maryland pursuant to 28 U.S.C.
§ 1391(b)(2) because, as the Complaint states, all counts "arise

15

Looking to the second part of the section 1404(a) analysis, the court must determine whether convenience and the interest of justice support transfer.  Within that analysis courts consider several factors, including: "(1) the plaintiff's [initial] choice of venue; (2) witness convenience and access; (3) the convenience of the parties; and (4) the interest of justice."  *Nader v. McAuliffe*, 549 F. Supp. 2d 760, 762 (E.D. Va. 2008).  As discussed below, these factors weigh in favor of transfer.

At the outset, the Court notes that Yancey's briefing does not oppose Defendants' characterization of the transfer factors.  Thus, the Court will accept Defendants' recitation of facts regarding convenience and the interest of justice as uncontested.  Additionally, as explained further below, the Court will apply the section 1404(a) analysis without reference to the forum-selection clauses contained in several of the contracts and bonds at issue.[13]

---

out of work performed by Truland" in Maryland.  (Compl. ¶¶ 19, 50.)

[13]     Ignoring the forum-selection clauses could affect the Court's transfer analysis in two ways.  First, if a valid forum-selection clause applies, the plaintiff's choice of forum is entitled to no weight and the burden shifts to the plaintiff to demonstrate that transfer is not warranted pursuant to the clause.  *See Atl. Marine Const. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 134 S. Ct. 568, 581 (2013).  Second, if a valid forum-selection clause is present, the court should not

1.        Plaintiff's Choice of Forum

The Court will first consider the significance of Yancey's choice of forum.  A plaintiff's choice of forum is generally entitled to substantial weight.  *Telepharmacy Solutions, Inc. v. Pickpoint Corp.*, 238 F. Supp. 2d 741, 743 (E.D. Va. 2003).  That weight, however, "varies with the significance of the contacts between the venue chosen by the plaintiff and the underlying cause of action."  *Pragmatus AV, LLC v. Facebook, Inc.*, 769 F. Supp. 2d 991, 995 (E.D. Va. 2011).  Yancey has three connections to this forum: (1) this Court appointed him as receiver; (2) Yancey has his principal place of business in Virginia; and (3) Truland was formerly at home in this District.  Thus, the connections between Yancey and this forum entitle his choice of venue to some weight.  That weight, however, is reduced slightly by the fact that Virginia has very little, if any, connection to the factual circumstances giving rise to this suit.  Accordingly, Yancey's choice is entitled to some, but not dispositive, weight.

---

consider private convenience factors in its analysis.  *Id.*; *Beatgasm, LLC v. Punchkick Interactive, Inc.*, No. 2:14-cv-611, 2015 WL 4394260, at *2 (E.D. Va. June 25, 2015) (noting these changes to the transfer analysis).  If the Court did consider the forum-selection clauses, the above changes to the analysis would *increase* the likelihood of transfer.  Because the Court concludes that transfer is justified even without the clauses, Defendants do not suffer any prejudice from the Court's decision to forego considering the clauses.

2.        Convenience of Parties

Next, the Court considers the parties' convenience of litigating in either forum.  Under this factor, "convenience to parties rarely, if ever, operates to justify transfer" when the plaintiff files in his home forum.  *Bd. of Trs., Sheet Metal Workers Nat'l Fund v. Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp. 1253, 1259 (E.D. Va. 1988).  "Therefore, even though a defendant may be inconvenienced by litigating an action in a plaintiff's home district, a transfer is not appropriate where it would likely only serve to shift the balance of inconvenience from the plaintiff to the defendant."  *JTH Tax, Inc. v. Lee*, 482 F. Supp. 2d 731, 738 (E.D. Va. 2007).

As described above, Yancey is at home in this District, as was Truland.  Accordingly, Defendants must show that they are inconvenienced by litigating in this forum to such a degree that transfer to Maryland would do more than merely shift inconvenience to Yancey.  Defendants' sole argument on this issue is that "Maryland is more convenient for the majority of defendants, who are either citizens of Maryland or reside in Maryland."  (Mem. in Supp. Transfer at 11.)  This conclusory statement is devoid of sufficient facts for the Court to evaluate just how inconvenient it is for Defendants to defend in Alexandria, Virginia, which could be more accessible to areas in

18

Maryland than the federal district courts in Baltimore and Greenbelt.[14]  Accordingly, the Court finds that Defendants have not shown that the convenience of the parties weighs in favor of transfer.

> 3.      Convenience of Witnesses and Access to Proof

"The party asserting witness inconvenience has the burden to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable the court to assess the materiality of evidence and the degree of inconvenience."  *Koh*, 250 F. Supp. 2d at 636.  Defendants note that witness convenience weighs in favor of transfer because "it may be necessary for the parties, experts, and other witnesses to inspect or view the project sites," which are all located in Maryland.  (Mem. in Supp. Transfer at 11.)  This Court typically requires more detailed proffers regarding the specific witnesses inconvenienced and the materiality of their testimony.  However, Yancey does not dispute the assertion that Maryland is more convenient for witnesses and that assertion is reasonable given that all three construction sites are located in Maryland.  *Cf. Guy F. Atkinson Constr. v. Ohio Mun. Elec.*

---

[14]    This appears particularly true with respect to Defendant Young, who lives in La Plata, Maryland, which is geographically closer to this federal courthouse than the Maryland alternatives.  (Compl. ¶ 17.)

*Generation Agency Joint Venture 5*, 943 F. Supp. 626, 629 (S.D.W. Va. 1996) (weighing convenience in favor of location of construction site and locus of dispute).  Accordingly, witness convenience and access weigh slightly in favor of transfer.

> 4.        Interest of Justice

The factor weighing heaviest in this particular case is the interest of justice.  The interest of justice is a purposefully broad category, taking into account all factors other than convenience and the parties' initial choice of venue. *See Precision Franchising, LLC v. Coombs*, 1:06-cv-1148, 2006 WL 3840334, at *6 (E.D. Va. Dec. 27, 2006).  Courts often consider factors such as judicial economy, avoidance of inconsistent judgments, interest in having local controversies decided at home, knowledge of applicable law, unfairness in burdening forum citizens with jury duty, and interest in avoiding unnecessary conflicts of law.  *Byerson v. Equifax Info. Servs., LLC*, 467 F. Supp. 2d. 627, 635 (E.D. Va. 2006).  Defendants have presented several unrebutted factors within this category that tip the scale toward transfer.

The interest in having localized controversies resolved at home weighs heavily in favor of transfer in this case.  *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 318 (5th Cir. 2008) (noting this factor weighs heavily in favor of

20

transfer in case with no factual connection to plaintiffs'
chosen forum).  This factor is particularly relevant here
because the state of Maryland owns the construction projects at
issue and hired the general contractor that hired Nationwide.
Additionally, the locus of operative facts is Maryland and three
of the four Defendants are Maryland residents.  It is also
preferable for Maryland to resolve this case because the
disputes turn on issues of Maryland law.  *See Gen. Foam Plastics
Corp. v. Kraemer Export Corp.*, 806 F. Supp. 88, 90 (E.D. Va.
1992).  These factors weigh heavily in favor of transfer.[15]

        On balance, the Court finds that the interest of
justice outweighs Yancey's choice of forum.  *See Byerson*, 467 F.
Supp. 2d at 635 (noting interest of justice may be decisive
factor, "even though the convenience of the parties and
witnesses point in a different direction"); 15 Fed. Prac. &

---

[15]      Yancey argues in a footnote that proceeding in this
Court would avoid piecemeal litigation.  (*See* Mem. in Opp'n to
Transfer at 6 n.3.)  This argument arises from Yancey's belief
that the Receiver Order requires "any claim that the Defendants
may bring as a setoff or counterclaim" to be brought in this
Court.  (*Id.* (citing Receiver Order ¶ 3).)  Yancey does not
direct the Court to the particular language in the Receiver
Order requiring setoffs or counterclaims to be brought
exclusively in this Court when a related proceeding is pending
against the same defendants elsewhere.  Assuming *arguendo* that
the Order does command that result, this Court could easily
prevent inconsistent judgments and preserve judicial economy by
transferring those setoffs and counterclaims to the related
proceeding.

Proc. Juris. § 3847 (4th ed.) (noting importance of interest of justice factor); *see also Perdue Farms, Inc. v. Design Build Contracting Corp.*, 263 F. App'x 380, 382 (4th Cir. 2008) (noting district court transferred construction contract claim to forum where "construction site is located").  Witness convenience and access also weighs slightly in favor of transfer.  Accordingly, the Court will transfer this case to the District of Maryland pursuant to 28 U.S.C. § 1404(a).

D.      Forum-Selection Clause

        As a last issue, the Court will briefly address Defendants'[16] forum-selection clause arguments and explain why the Court did not rely upon that clause.[17]  The contracts between the general contractor and Nationwide contain the following forum-selection clause: "In the event of any lawsuit under this clause, the Courts of Maryland shall have sole and exclusive

---

[16]      Only Defendants Young, Nationwide, and Fidelity sought to enforce the forum-selection clause.

[17]      The Court recognizes that the applicability of the forum-selection clause changes the transferee court's choice-of-law analysis.  Typically, a court receiving a 1404(a) transfer must apply the choice-of-law principles from the transferor court.  *See Atl. Marine Const. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 134 S. Ct. 568, 582 (2013).  But when a plaintiff files suit in violation of a forum-selection clause, "the contractually selected venue should not apply the law of the transferor venue to which the parties waived their right."  *Id.* at 583.  That distinction is immaterial in this case, however, because the contracts at issue dictate that Maryland law applies and the claims against the individual defendants arise from a Maryland statute.

22

jurisdiction." (UMD Subcontract ¶ 11(c) [Dkt. 1-5] at 9; Travel Plaza Subcontract ¶ 11(c) [Dkt. 1-7] at 11.) Defendants argue that this clause renders venue "improper" in this Court. (*See* Mem. in Supp. Transfer at 6-7.) Thus, Defendants contend that the forum-selection clause, if applicable, mandates dismissal under Rule 12(b)(3) or transfer for lack of venue under 28 U.S.C. § 1406(a). Those arguments are based on a misunderstanding of how forum-selection clauses affect venue.

The Supreme Court recently clarified the proper procedure for a civil defendant to follow to enforce a forum-selection clause. *See Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 134 S. Ct. 568, 579-80 (2013). In *Atlantic Marine*, the Supreme Court explained that "1406(a) and Rule 12(b)(3) allow dismissal only when venue is 'wrong' or 'improper.'" *Id.* at 577. But whether venue is proper depends on federal venue statutes and "a forum selection clause has no effect on the inquiry." *Devil's Advocate, LLC v. Grynberg Petroleum Co.*, 588 F. App'x 264, 264 (4th Cir. 2014) (citing *Atl. Marine*, 134 S. Ct. at 577). Instead of enforcing a forum-selection clause through Rule 12(b)(3) or section 1406(a), a party may seek to transfer under 28 U.S.C. § 1404(a), which "does not condition transfer on the initial forum's being 'wrong.'" *Atl. Marine*, 134 S. Ct. at 577. Accordingly, the

Court must deny Defendants' 12(b)(3) motion to dismiss for improper venue under the forum-selection clause.

The Supreme Court did acknowledge that a forum-selection clause may justify dismissal when the clause points to a nonfederal forum. But in the event the clause points to a state or foreign forum, it is *forum non conveniens* that may permit dismissal, not Rule 12(b)(3). *See id.* at 580; *Devil's Advocate*, 588 F. App'x at 264 (finding *forum non conveniens* did not justify dismissal because clause permitted federal forum); *Harmon v. Dyncorp Int'l, Inc.*, No. 1:13cv1597, 2015 WL 518594, at *8-9 (E.D. Va. Feb. 6, 2015) (applying *forum non conveniens* analysis under *Atlantic Marine*). If *forum non conveniens* is at issue, "courts should evaluate a forum-selection clause pointing to a nonfederal forum in the same way that they evaluate a forum-selection clause pointing to a federal forum." *Atl. Marine*, 134 S. Ct. at 580. The district court has "substantial flexibility in evaluating a *forum non conveniens* motion." *Van Cauwenberghe v. Baird*, 486 U.S. 517, 529 (1988).

Under Fourth Circuit law, the forum-selection clause at issue in this case points to a nonfederal forum.[18] The clause

---

[18] Federal law governs the interpretation of a forum-selection clause. *See Albermarle Corp v. AstraZeneca UK Ltd.*, 628 F.3d 643, 651 (4th Cir. 2010). The forum-selection clause at issue in this case, however, must be read in the context of

refers to "Courts of Maryland," which courts typically interpret as limiting "jurisdiction over the parties' dispute to the state courts of the named state." *FindWhere Holdings, Inc. v. Sys. Env't Optimization, LLC*, 626 F.3d 752, 755 (4th Cir. 2010); *Doe 1 v. AOL, LLC*, 552 F.3d 1077, 1082 (9th Cir. 2009) (concluding that "Courts of Virginia" refers to Virginia state courts only); *Weener Plastics, Inc. v. HNH Packaging, LLC*, No. 5:08-cv-496, 2009 WL 2591291, at *7 (E.D.N.C. Aug. 19, 2009) ("'[C]ourts of North Carolina' refers exclusively to the state courts of North Carolina . . . ."); *Koch v. Am. Online, Inc.*, 139 F. Supp. 2d 690, 694 (D. Md. 2000) (concluding "courts of Commonwealth of Virginia" refers exclusively to Virginia state courts).  No party in this case recognized that "Courts of Maryland" does not include federal courts, which are merely courts "in Maryland." *See FindWhere Holdings*, 626 F.3d at 755 (distinguishing between courts "of" a state and courts "in" a state).  To the contrary, Defendants consistently argued that the forum-selection clause here points to Maryland's *federal* courts, such as when

---

Maryland law because the contract designates that Maryland law should apply.  *Id.*  The choice of law is not significant in this case, however, because Maryland has generally adopted the federal standards for interpreting forum-selection clauses.  *See Main Line Mech. of Va., Inc. v. Herman/Stewart Const. & Devel., Inc.*, No. 11cv203, 2011 WL 3880462, at *2 (D. Md. Sept. 1, 2011) ("Maryland courts have adopted the federal standard in analyzing the enforceability of a forum-selection clause." (quoting *Gilman v. Wheat, First Sec., Inc.*, 692 A.2d 454, 463 (Md. 1997)).

Defendants argued "THE COURT SHOULD TRANSFER THIS CASE TO THE DISTRICT OF MARYLAND UNDER THE FORUM SELECTION CLAUSE."  (Mem. in Supp. Transfer at 9 (formatting in original).)  Defendants' memoranda contain many similar requests to transfer to Maryland federal court.  (*See* Mem. in Supp. Transfer at 2, 7, 9, 11; Reply in Supp. Transfer at 7, 8, 9.)

Because the forum-selection clause at issue points to a nonfederal forum, the appropriate procedure for applying the clause is *forum non conveniens*.  No party, however, has argued that *forum non conveniens* requires dismissal of this case.  The Court will not reach that conclusion *sua sponte* for several reasons.[19]  First, because Defendants did not assert that state court is the proper forum, this Court heard no argument on the reasonableness of barring a federal receiver from enforcing a federal order in a federal forum.  Without such argument, a *forum non conveniens* dismissal would be imprudent in this case.  Second, the Court cannot rule out the possibility that Defendants intentionally waived a *forum non conveniens* argument because they preferred this case to proceed in a federal, rather

---

[19]    The Fourth Circuit has recognized a district court's authority to *sua sponte* apply *forum non conveniens*.  *See United States v. Moussaoui*, 483 F.3d 220, 246 (4th Cir. 2007).

than state, forum.[20]   Thus, the Court will not *sua sponte* apply a doctrine that no party has advocated for, that could unreasonably affect the federal Receiver's rights, and that Defendants potentially waived or do not desire.

### I.   Conclusion

For the reasons stated above, the Court will deny the motions to dismiss for lack of venue and lack of personal jurisdiction.  The Court will grant the motion to transfer to the U.S. District Court for the District of Maryland pursuant to 28 U.S.C. § 1404(a).

An appropriate order will issue.

|  | /s/ |
|---|---|
| May 25, 2016 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |

---

[20]     For a discussion of waiver of a forum-selection clause, see *Whiting-Turner Contracting Co. v. Westchester Fire Ins. Co.*, No. JFM-13-348, 2013 WL 3177881, at *5 (D. Md. June 20, 2013).